UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN MICHAEL FURMAN,

                    Petitioner,

v.                                    Case No. 3:11-cv-629-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS AND
THE ATTORNEY GENERAL OF
THE STATE OF FLORIDA,

                    Respondents.

_____

## ORDER

## I. Status

Petitioner John M. Furman, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Petition) (Doc. 1) under 28 U.S.C. § 2254 on June 27, 2011. In this action, Furman challenges a 2005 state court (Clay County, Florida) judgment of conviction for armed robbery, attempted second degree murder and possession of a firearm by a convicted felon. Respondents submitted a memorandum in opposition to the Petition on August 7, 2012. See Respondents' Response to Petition for Writ of Habeas Corpus (Response) (Doc. 15) with exhibits (Resp. Ex.). On October 28, 2011, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 7), admonishing Furman regarding his obligations and giving Furman a time frame in which to submit a reply. Furman submitted a reply brief on January 28, 2013. See Reply (Doc. 23). This case is ripe for review.

## II. Procedural History

On January 28, 2004, the State of Florida charged Furman with armed robbery and attempted second degree murder. Resp. Ex. A at 7, Information. The State amended the Information on March 7, 2005, to charge Furman with armed robbery (count one); attempted second degree murder (count two); and possession of a firearm by a convicted felon (count three). Id. at 53. Furman proceeded to trial in March 2005, at the conclusion of which a jury found him guilty of armed robbery, attempted second degree murder and possession of a firearm by a convicted felon. Resp. Exs. B; C; D, Transcripts of the Jury Trial (Tr.) at 475-76; Resp. Ex. A at 100-01, Verdict. On March 29, 2005, the court sentenced Furman to a term of life imprisonment for count one, a term of life imprisonment for count two, to run concurrently with count one, and a term of fifteen years imprisonment for count three, to run concurrently to counts one and two. Resp. Ex. A at 115-22, Judgment.

With the benefit of counsel, Furman appealed, arguing that the trial court erred when it denied his motion for new trial and found that the State's evidentiary error (that the DNA swab admitted into evidence at trial, as exhibit 19, was from an unnamed third party) was harmless. Resp. Ex. F. The State filed an Answer Brief, see Resp. Ex. G, and Furman filed a Reply Brief, see Resp. Ex. H. On December 15, 2005, the appellate court affirmed Furman's conviction and sentence per curiam without issuing a written opinion, see

Furman v. State, 918 So.2d 295 (Fla. 1st DCA 2005); Resp. Ex. I, and the mandate issued on January 3, 2006, see Resp. Ex. I. Furman did not seek review in the United States Supreme Court.

On April 27, 2006, Furman filed a pro se petition for writ of habeas corpus. Resp. Ex. J. In the petition, he asserted that appellate counsel was ineffective because he failed to raise on direct appeal that Furman was incompetent to stand trial. On June 20, 2006, the court denied the petition on the merits, see Furman v. State, 935 So.2d 27 (Fla. 1st DCA 2006); Resp. Ex. L, and later denied Furman's motion for rehearing on August 8, 2006, see Resp. Ex. M.

On August 22, 2006, Furman filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. N at 1-10. In his request for post conviction relief, Furman asserted that the trial court erred when it failed to conduct a proper Faretta[1] hearing. On May 17, 2007, the trial court denied the motion and stated that Furman's argument "could or should have been raised on direct appeal and is thus procedurally barred." Id. at 15. On appeal, Furman filed a pro se brief, see Resp. Ex. O, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. P. On April 22, 2008, the appellate court affirmed the trial court's denial per curiam, see Furman v. State, 982 So.2d 688 (Fla. 1st DCA 2008); Resp. Ex.

---

[1] Faretta v. California, 422 U.S. 806 (1975).

3

R, and later denied Furman's motion for rehearing on May 23, 2008, see Resp. Ex. S-1. The mandate issued on June 11, 2008. See Resp. Ex. S-2.

On December 4, 2007, Furman filed a second pro se motion for post conviction under Rule 3.850 (second Rule 3.850 motion). Resp. Ex. T at 1-10. In this request for post conviction relief, Furman asserted that counsel was ineffective because he failed to inform the court that Furman had been hospitalized for a mental illness twenty years earlier. The State responded and conceded that a hearing was needed. Id. at 82-83. The trial court held an evidentiary hearing on December 18, 2009, at which Furman was represented by counsel. Resp. Ex. U at 165-206, Transcript of the Evidentiary Hearing (EH Tr.). On January 28, 2010, the court denied Furman's request for post conviction relief. Resp. Ex. T at 109-64. On appeal, Furman filed a pro se brief, see Resp. Ex. V, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. W. On November 9, 2010, the appellate court affirmed the trial court's denial per curiam, see Furman v. State, 51 So.3d 1157 (Fla. 1st DCA 2010); Resp. Ex. Y, and later denied Furman's motion for rehearing on January 26, 2011, see Resp. Exs. Z; AA. The mandate issued on February 11, 2011. See Resp. Ex. BB.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period.  See 28 U.S.C. § 2244(d); Response at 3 n.2.

4

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Furman's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

5

> determined by the Supreme Court of
> the United States; or
>
> (2) resulted in a decision that
> was based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars religation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> As explained by the Supreme Court, the
> phrase "'clearly established Federal
> law' . . . refers to the holdings . . . of
> [the Supreme Court's] decisions as of the time
> of the relevant state-court decision."
> Williams v. Taylor, 529 U.S. 362, 412, 120
> S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We
> have held that to be "contrary to" clearly
> established federal law, the state court must
> either (1) apply a rule "that contradicts the
> governing law set forth by Supreme Court case
> law," or (2) reach a different result from the
> Supreme Court "when faced with materially
> indistinguishable facts." Putman v. Head, 268
> F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application"
> prong of § 2254(d)(1), we have held as
> follows:
>
> A state court decision is an
> unreasonable application of clearly
> established law if the state court

> unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed <u>de novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.
>
> <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[2] 28 U.S.C. § 2254(e)(1).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1155-56 (11th Cir. 2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's

---

[2] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

rationale for such a ruling. <u>Harrington</u>, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Furman's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability

> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." Id., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88.

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation omitted). "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[3], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's

---

[3] Knowles v. Mirzayance, 556 U.S. 111 (2009).

9

> determination" under the <u>Strickland</u> standard
> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct.
> 1933. And, because the <u>Strickland</u> standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Furman asserts that the trial court erred when it failed to conduct a proper <u>Faretta</u> hearing. He states that the trial judge failed to inquire as to his history of mental illness. Respondents contend that the claim is procedurally barred since Furman failed to raise the issue on direct appeal. <u>See</u> Response at 4. On this record, the Court agrees that the trial court error claim has not been exhausted and is therefore procedurally barred since Furman failed to raise the claim in a procedurally correct

10

manner. Furman has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that the claim is not procedurally barred and presents an issue of federal constitutional dimension, Furman's claim, nevertheless, is without merit as it does not warrant federal habeas relief. The seminal United States Supreme Court decision on the issue of the right to self-representation is Faretta v. California, 422 U.S. 806 (1975), in which Faretta, a criminal defendant, "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." Id. at 835. The Supreme Court held that a defendant has a right to represent himself but, in order to do so, he must knowingly and intelligently waive his right to counsel. Id.

Furman acknowledges, and the record reflects, that the trial court conducted no less than three separate Faretta hearings. Furman describes the circumstances leading up to the first one.

> Defendant's Public Defender told Defendant during an attorney-client visit at the Clay County Jail upon questioning by Defendant, that he (Public Defender) had never won a jury trial. Defendant at that point told [the] Public Defender that he felt he would be better off to represent himself even though he had been in a mental hospital and been found incompetent to stand trial. A few days prior to Defendant's suppression hearing, Public Defender Bruce Culbert told [the] court that Defendant wanted to represent himself at the

> suppression hearing and at trial.[4] The court then proceed[ed] to ask the Defendant questions during the <u>Faretta</u> hearing. The court ask[ed] the Defendant how old he was, how much education he had, asked if he understood the danger of representing himself and asked if he freely and voluntarily waived his right to counsel. But the court did not ask the Defendant if he ever had a history of mental illness, which is a mandatory question that the court must ask during a <u>Faretta</u> hearing. Had the court ask[ed] the question of mental illness it would [have] learned of Defendant's prior hospital commitment and prior [ad]judication of being found incompetent to stand trial in [a] February 27, 1978 grand larceny case ... no. 0006714573 and the case was dismissed on May 18, 1978 [for his] incompeten[ce] to stand trial. Since this time Defendant has never been found competent by any court.

Petition at 4-5.

Just prior to the March 11, 2005 suppression hearing, the trial court asked Furman if he was prepared to proceed on his own, (with Assistant Public Defender Kelly Papa as standby counsel). Resp. Ex. A at 140. Furman affirmed that he was prepared to proceed on his own and acknowledged that Assistant Public Defender Bruce Culbert had prepared the motion to suppress. <u>Id</u>. at 140, 142. The following colloquy ensued.

---

[4] In his state petition for writ of habeas corpus, Furman states that Assistant Public Defender Bruce Culbert "first notified the lower court" on February 17, 2005, that Furman wanted to represent himself. <u>See</u> Resp. Exs. J at 4; A at 6, Case No. 2004-CF-000026, case docket entry, "Represent himself; court granted; public defender to be on standby; reset hearing on motion to suppress, dated February 17, 2005."

THE COURT: . . . Now, I've gone over this with you a number of times, but, you know, we're at a crucial stage here again –

THE DEFENDANT: Yes, sir.

THE COURT: -- in this suppression hearing today, because if it were suppressed, it would certainly enhance your chances at a trial. But if it's found to be admissible, then, of course, obviously it would be used against you in the trial which is set for Monday.

THE DEFENDANT: Yes, sir.

THE COURT: Once again, I want to ask you, are you sure you want to represent yourself?

THE DEFENDANT: Well, yes, sir, and, you know, at this time I think I could give you an example of -- a little better of why I want to represent myself. I'm fighting for my life in this trial, and my lawyer that was -- which was Mr. Culbert, you know, this hearing didn't seem to mean too much to him. He was worried about a three-day vacation more than he was worried about this hearing. See, I'm fighting for my life, and he's worried about a three-day vacation. So, you know, I just don't feel like he's going to fight for me like I'm going to fight for me. And it's not just him; I wouldn't let Johnny Cochran come to my trial.

THE COURT: Well, this hearing was originally set for yesterday, when [Mr. Culbert] was here because he was here.

THE DEFENDANT: Right.

THE COURT: And because of some conflict with some witnesses, that's the reason it was moved today, not by Mr. Culbert's doings.

Now, if you feel you want to wait till [sic] Monday and [have] him help you with it, certainly I would entertain that.

13

THE DEFENDANT: No, sir. She [(Assistant Public Defender Kelly Papa)] can answer any questions I got. And it's -- like I say, it ain't Mr. Culbert. I wouldn't let Johnny Cochran represent me at this trial.

. . . .

THE COURT: . . . You know, I've gone over this with you a number of times, and the appellate court keeps telling me that I need to go over that with you each time.

THE DEFENDANT: Yes, sir, you got to cover yourself.

THE COURT: Well, I'm trying to help you too at the same time.

Now, you would agree with me today that you have been offered a lawyer throughout this whole proceeding, correct?

THE DEFENDANT: Yes, sir.

THE COURT: And I explained to you that the lawyer has a lot more knowledge about the law than you do.

THE DEFENDANT: Yes, sir.

THE COURT: And certainly has a lot more knowledge about the procedure and how to conduct a trial, correct?

THE DEFENDANT: That's correct.

THE COURT: Your only experience, as I understand it, is your time that you spent as a defendant in a trial. And you didn't actually represent yourself in that case, a lawyer represented you, correct?

THE DEFENDANT: That's right.

THE COURT: And at that time there was a hung jury and the case was not later tried. I think ya'll worked out a negotiated plea, and

you, subsequent to that time, entered a plea, correct?

THE DEFENDANT: That's correct.

THE COURT: Have you considered any witnesses that you would be calling?

THE DEFENDANT: No, sir. My witnesses are the state's witnesses.

THE COURT: You don't have any other witnesses other than the state witnesses?

THE DEFENDANT: No, sir.

THE COURT: Okay. Well, you know, throughout this trial the lawyer is kind of unbiased and would have -- and based on their experience and training and education, then they have the ability to kind of look at this objectively and make the proper objections at the proper time because they're trained to do that; whereas, you don't have any of that kind of training. I think you told me maybe yesterday that you had a high school education and three years of college, correct?

THE DEFENDANT: Yes, sir.

THE COURT: And I think you were just short of graduating from college, weren't you?

THE DEFENDANT: Yes, sir.

THE COURT: And, as I told you earlier, it's not ever wise to represent yourself; although, I can't prevent that.

THE DEFENDANT: They say a man that represents hisself [sic] got a fool for a client.

THE COURT: Yeah, I've heard that one too. Yeah, that's true. And I already told you that even though you're representing yourself, I'm not going to give you any kind of special

15

treatment; you're going to be treated just like anyone else is treated in a trial.

THE DEFENDANT: I ain't asking for none.

THE COURT: I know. You got to follow the rules, the rules of evidence and the rules of criminal procedure, correct?

THE DEFENDANT: That's right.

THE COURT: Okay. And if you cause any disruption during the court, you understand I have the right to remove you, and the trial goes on without you even being present, so that even disadvantages you even more. You understand that?

THE DEFENDANT: I don't plan on causing no disruption.

THE COURT: Okay. I understand that.

And you're familiar with all the charges against you, right? And I talked to you about the penalties to the first two charges against you. You can get life in prison, either of them –

THE DEFENDANT: Right.

THE COURT: –- max, and the other charge can get you a max of 15 years in prison.

THE DEFENDANT: That's right.

**THE COURT: Right.**

**All right. Knowing all that, you still want to represent yourself, correct?**

**THE DEFENDANT: Most definitely.**

Resp. Ex. A at 143-48 (emphasis added).

On the morning of March 28, 2005, just before jury selection, the court held another <u>Faretta</u> hearing.[5] Tr. at 8-23. As part of the inquiry, the following colloquy ensued.

> THE COURT: So you understand how serious this is today?
>
> THE DEFENDANT: Oh, yeah, for all the marbles.
>
> THE COURT: Okay. Yeah.
>
> All right. Now, very briefly, how old are you again?
>
> THE DEFENDANT: 48.
>
> THE COURT: 48. And how far did you go in school?
>
> THE DEFENDANT: I went to [sic] up to the 12th grade and took three years of college courses.
>
> THE COURT: Okay. You're not under the influence today of any type of alcohol, medications, or anything like that, are you?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Have you ever been diagnosed or treated for any kind of mental illness?
>
> THE DEFENDANT: Yes, sir, but it's been 20 years ago.
>
> THE COURT: What was that?
>
> THE DEFENDANT: Sir?
>
> THE COURT: What was that?

---

[5] <u>See</u> Petition at 5 ("At this third <u>Faretta</u> hearing the court finally ask[ed] the Defendant if he ever had a history of mental illness.").

THE DEFENDANT: Well, I thought I was Jesus and the devil.

THE COURT: Did you later find out you weren't?

THE DEFENDANT: Yeah, it didn't take long.

THE COURT: So you're all straightened out on that?

THE DEFENDANT: Yeah, I've been straight for a long time.

THE COURT: You haven't had any problems since then?

THE DEFENDANT: No.

THE COURT: Has anybody told you not to have a lawyer or is that just a decision you made?

THE DEFENDANT: Well, Your Honor, I'll tell you the truth about it. It wasn't just the thing with the public defender and all. Just like when you talked about -- you just talked about them life sentences and all, and I just don't think that I can let another -- another human being stand up before this jury and plead why I shouldn't get a life sentence. I just don't think that they're going –

THE COURT: Well, I understand that, but you understand that I'm required to inquire about that, and that's the reason –

THE DEFENDANT: And I appreciate you doing it.

THE COURT: Yeah. Yeah.

All right. Have you ever represented yourself in a trial?

THE DEFENDANT: No, sir.

18

> THE COURT: We've already talked about you having a standby counsel, right?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: **Well, Mr. Furman, once again, several times I've had this hearing with you, but I find you're competent to waive counsel.**
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I'm going to have standby counsel here. . . .

Id. at 21-23 (emphasis added).

On this record, the Court finds no error in the trial court's actions. The trial judge properly determined that Furman was competent to waive counsel. The record reflects that Furman was well-equipped mentally to represent himself at the suppression hearing and trial. As a safeguard, the trial judge advised Furman that Assistant Public Defender Culbert would act as standby counsel at trial. This ground does not warrant federal habeas corpus relief. See Response at 6-8; Section VII., C. Ground Three; EH Tr. at 199 (Culbert testifying that Furman was "absolutely not" suffering from mental illness or deficiency when he represented him and acted as standby counsel).

## B. Ground Two

As ground two, Furman asserts that the trial court tried him while he was incompetent. Respondents contend that the claim is procedurally barred since Furman failed to raise the issue on direct appeal. See Response at 8. On this record, the Court agrees

that the trial court error claim has not been exhausted and is therefore procedurally barred since Furman failed to raise the claim in a procedurally correct manner. Furman has not shown either cause excusing the default or actual prejudice resulting from the bar.[6] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Even assuming that the claim is not procedurally barred and presents an issue of federal constitutional dimension, on this record, Furman's claim is without merit. Thus, Furman's ground two does not warrant federal habeas relief.

### C. Ground Three

As ground three, Furman asserts that counsel was ineffective because he failed to inform the trial court at the first <u>Faretta</u> hearing (before the February 17, 2005 suppression hearing) that Furman had been in a mental hospital and that a court had found him to be incompetent to stand trial in a 1978 grand larceny case. Furman raised the ineffectiveness claim in his second Rule 3.850 motion. Resp. Ex. T at 1-10. After an evidentiary hearing, at which Furman and Assistant Public Defender Culbert testified, the court denied the Rule 3.850 motion, stating in pertinent part:

---

[6] As previously stated, in his pro se petition for writ of habeas corpus, Furman asserted that appellate counsel was ineffective because he failed to raise on direct appeal that Furman was incompetent to stand trial. Resp. Ex. J. The appellate court denied the petition on the merits, <u>see</u> <u>Furman</u>, 935 So.2d 27, and later denied his motion for rehearing, <u>see</u> Resp. Ex. M.

> In the Defendant's only ground for relief, he alleges defense counsel was ineffective for failing to inform the Court of the Defendant's admission of being hospitalized for mental illness twenty years earlier. The Defendant argues that his competency would have been called into question had this information been provided to the Court earlier than it was disclosed. At the Evidentiary Hearing, defense counsel testified that he met with the Defendant on over a dozen occasions, and during all those meetings, the Defendant had the ability to understand what was going on and communicate in a manner that was logical and rational. (Exhibit "A," pages 31-32.)[7] Defense counsel also discussed the ramifications of legal competency and incompetency with the Defendant, and the Defendant raised the issue of mental competency as a trial strategy to explore for his case. (Exhibit "A," pages 33-35.)[8] Defense counsel testified that the Defendant was "absolutely not" suffering from a mental illness or deficiency. (Exhibit "A," page 35.)[9] This Court finds defense counsel's testimony to be more credible.

Id. at 110-11. The appellate court affirmed the trial court's determination per curiam, see Furman, 51 So.3d 1157, and later denied Furman's motion for rehearing, see Resp. Exs. Z; AA.

Given the record in the instant action, the appellate court may have affirmed the denial of Furman's motion for post conviction relief on the merits. If the appellate court addressed the merits, Furman would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.

---

[7] See EH Tr. at 195-96.

[8] See EH Tr. at 197-99.

[9] See EH Tr. at 199.

After a comprehensive review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Furman is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Furman's claim is still without merit. The trial court's conclusion is fully supported by the record. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Furman must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted). Furman failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance.

After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner Furman. The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). In the instant action, Furman has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340

(2003). Given the trial court's credibility determination, Furman's claim is wholly unsupported, and therefore must fail.

Given the record, in this case, counsel's performance was well within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Furman has not shown prejudice. Indeed, the Court notes that the State has substantial evidence of Furman's competency, and he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had informed the trial court at the first _Faretta_ hearing in February 2005 that Furman had been in a mental hospital and that a court had found him to be incompetent to stand trial twenty-seven years earlier in 1978. Furman's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. _See_ Response at 10-18; EH Tr. at 194-205 (Assistant Public Defender Culbert's testimony relating to his representation of Furman in early 2005); Tr. at 21-22.

### D. Ground Four

As ground four, Furman asserts that the trial court erred when it denied Furman's motion for new trial based on harmless error. Furman raised this issue in his briefs on direct appeal, _see_ Resp. Exs. F; H; the State filed an Answer Brief, _see_ Resp. Ex. G; and the appellate court affirmed Furman's conviction and sentence per curiam without issuing a written opinion, _see_ _Furman_, 918 So.2d

295. For purposes of analysis, the Court will assume that Furman sufficiently exhausted the claim in state court, and that the claim is properly before this Court.[10]

The State, in its brief, addressed the claim on the merits. Resp. Ex. G at 5-7. Thus, the appellate court may have affirmed Furman's conviction based on the State's merits argument. If the appellate court addressed the merits, Furman would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[11] After a careful review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Furman is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Furman's claim is without merit because the trial court did not abuse its

---

[10] See Response at 19-21.

[11] See Harrington, 131 S.Ct. at 785 (holding and reconfirming that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits).

discretion in denying his motion for new trial as to the
evidentiary error. <u>See</u> Response at 21; Resp. Ex. G at 5-6. The
following facts are pertinent to resolution of this claim.  A few
days after trial, the State filed a post-trial notice of
evidentiary error. <u>See</u> Resp. Ex. A at 109, State's Notice to Court
and Defendant of Evidentiary Error. In the notice, the State
asserted:

> 1.   The item admitted in the trial as State's
>      Exhibit 19, thought to be the known DNA
>      swab of the Defendant, was actually a DNA
>      swab of a third party. The detective's
>      initials and the FDLE tracking number on
>      the item mistakenly admitted were all the
>      same as on the actual known DNA swab of
>      the Defendant.
>
> 2.   The testing done by Bode Technologies
>      that resulted in the DNA match to the
>      blood at the scene used the correct DNA
>      swab taken from the Defendant.
>
> 3.   The testimony from the expert witness
>      from Bode Technologies referred to the
>      correct DNA swab and is unchanged by this
>      exhibit error.
>
> 4.   Testimony brought out by the Defendant
>      during the trial also referred to the
>      original AFIS hit on the DNA from the
>      scene, which identified the Defendant as
>      the one that left the blood at the scene.
>      Testing on the known DNA swab merely
>      verified the original results that
>      originally identified the Defendant.
>
> 5.   Since the Defendant admitted throughout
>      the trial that he was the person that
>      committed the robbery and shot himself at
>      the scene, this error was harmless.
>      Rather than identification, the defense

> presented was duress and necessity, as
> well as accident.
>
> 6.    Identification of the Defendant as the
> person that left the blood trail at the
> scene was also corroborated by the
> Defendant's pretrial confession, which
> was admitted during the trial.
>
> Therefore, the underlying DNA testing
> that occurred in this case was correct and the
> testimony regarding the results of the testing
> done in this case was correct. The mistake
> that occurred during trial regarding the
> exhibit entered into evidence did not affect
> the reliability of either of these things.
>
> Although the Defendant did not dispute
> the DNA evidence or identification of himself
> as the one that committed the crimes, and the
> State believes that the error made was
> harmless, the State hereby notifies the Court
> and the Defendant of the newly discovered
> mistake in the evidence actually introduced
> during the trial.

Id. With the benefit of counsel (Assistant Public Defender Culbert,

Furman's standby counsel at trial), Furman filed a motion for new

trial and asserted that the error was not harmless. See id. at 125,

Second Motion for New Trial. At a hearing, at which Assistant

Public Defender Hellmuth represented Furman, see id. at 178-81, the

trial judge denied the motion, see id. at 134, stating in pertinent

part:

> Well, in that Mr. Furman admitted it was
> his blood, I don't know what the DNA proved
> anyway, so [the] motion for new trial is
> denied. I think it was harmless error. . . .

Id. at 180-81.

27

In his opening statement at trial, Furman, who elected to represent himself, told the jury that the State did not need to introduce expert testimony about DNA evidence. He explained:

> [T]hey say that they got some technicians coming in, specialists, that's [sic] going to tell you that this is my blood coming out of this robbery, that they got people -- policeman [sic] coming in here and they got witnesses testifying that I did this crime. **I did this crime. I don't know why they're bringing in all the experts. It's my blood.**
>
> I walked into that bar with a pistol, I robbed the Roadhouse Grill, and I left. As I was backing out of the door, I had a money box in my hand -- you're going to hear all this in the trial -- I had a money box in my hand, and I had another handful of money in this hand, with a pistol, and I'm walking out of the bar.
>
> As I was walking out of the bar, Mr. Lutz grabbed me. When he grabbed me, the gun went into my side and went off. It shot through my arm. It shot through my arm right here and hit Mr. Lutz up under his arm or hit him in his side. As we was [sic] going down, the gun caught on my -- caught on my sleeve or caught on the shirt that I had over my head and went off again. They say twice more. I thought it was once more. But he got shot again. Apparently he got shot two more times.
>
> I guess you're asking yourself,[w]ell, if you [sic] sitting here telling me that you robbed this and all, what's this trial all about? My defense is called duress and necessity. I didn't have a -- I didn't have a choice about -- you're going to find out during this trial that I was a crack addict. I had been on crack for about a good year and a half, every day, 24/7. . . .

Tr. at 135-36 (emphasis added). Additionally, in his opening statement, he told the jury that a drug dealer put a gun to his

head and threatened to kill him if he did not rob the liquor store and get money that he owed the dealer. Id. at 137.

During his cross-examination of Farkas (the robbery victim), Furman stated that he robbed Farkas. Id. at 152-62. Furman commenced his cross-examination of Lutz (the shooting victim) as follows:

> Mr. Lutz, I'm the one that committed that robbery, and I'm the one that you grabbed from behind when I was coming out the door, and before I ever ask you a question, I want to tell you I'm sorry that you got hurt, and it was never intended for you to be hurt. And from the night that I ran around that building and got in that car, I was bleeding profusely myself. I guess you could tell by all the blood that you heard about was left on the ground going out there. And, you know, from that night I prayed for you every night.

Id. at 175-76. The State introduced exhibit 19 during Detective McKinney's testimony. Id. at 229-31. Additionally, Furman testified that he robbed the victim, and the blood at the scene belonged to him.

> You know, I told you to start with that I committed this crime. I told you that I went in the Roadhouse Bar. I told you this was my blood. You know, I was truthful about it from the time that the detectives came and -- out at the p-farm and interviewed me about this case, and I told them everything that happened. I didn't lie to them, and I'm not lying to ya'll.
>
> . . . .

> During the confession that y'all [sic] heard,[12] you know, I pretty much -- I poured my heart out to this detective. I told him everything that happened. There was nothing in this confession that I didn't tell the detectives.

Id. at 268.

As the State declared in its post-trial notice, the evidence that was erroneously admitted was a DNA swab taken from a third party; it shared the same labeling (detective's initials and FDLE tracking number) as the known DNA swab taken from Furman's mouth. Given the record, the trial court did not err in denying Furman's motion for new trial because the DNA testing was done on the correct swab (Furman's sample), and trial testimony based on that testing referred to the correct swab. On federal habeas review, harmless error is determined by applying the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).

> On collateral review, we apply the harmless-error standard as articulated in Brecht v. Abrahamson, which dictates that a federal court may grant habeas relief on account of a constitutional error only if it determines that the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); see Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1110-12 (11th Cir. 2012) (outlining Brecht analysis on federal habeas review), cert. denied, Trepal v. Crews, -- U.S.--, 133 S.Ct. 1598, 185 L.Ed.2d 592 (2013). Under the Brecht standard, the petitioner should prevail

---

[12] See Tr. at 234-37.

> when the record is "so evenly balanced that a
> conscientious judge is in grave doubt as to
> the harmlessness of an error." O'Neal v.
> McAninch, 513 U.S. 432, 437, 115 S.Ct. 992,
> 995, 130 L.Ed.2d 947 (1995); see Caldwell v.
> Bell, 288 F.3d 838, 842 (6th Cir. 2002) ("When
> faced with a Sandstrom error a court should
> not assume it is harmless but must review the
> entire case under the harmless-error standard
> the Supreme Court most recently expounded in
> Brecht...."). "To show prejudice under Brecht,
> there must be more than a reasonable
> possibility that the error contributed to the
> conviction or sentence." Trepal, 684 F.3d at
> 1114 (internal quotation marks omitted).

Owens v. McLaughlin, 733 F.3d 320, 328 (11th Cir. 2013).

Applying Brecht, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1307 (11th Cir. 2012) (quoting Brecht, 507 U.S. at 637), cert. denied, 133 S.Ct 861 (2013). "To show prejudice under Brecht, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." Mason v. Allen, 605 F.3d 1114, 1123 (11th Cir. 2010) (internal quotation marks and alteration omitted).

Upon review of the record as a whole, this Court concludes that Furman has not established that the error in admitting State's exhibit 19 (assuming for analysis that it was constitutional error) "had a substantial and injurious effect or influence in determining the jury's verdict." Nor has he shown "more than a reasonable possibility that the error contributed" to the conviction. Trepal

<u>v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1114 (11th Cir. 2012) ("The question turns on whether the Court can 'say, with fair assurance,' that the verdict 'was not substantially swayed by the error[.]'"), <u>cert</u>. <u>denied</u>, 133 S.Ct 1598 (2013). Given the record, Furman is not entitled to habeas relief as to ground four.

### E. Ground Five

As ground five, Furman asserts that the trial court erred when it permitted Assistant Public Defender Culbert (who was standby counsel at trial) to file a motion for new trial on Furman's behalf and allowed Assistant Public Defender Hellmuth to represent Furman at a post-trial hearing on the motion. Furman states that the court should have permitted him to represent himself. As previously discussed with respect to ground four, upon the State's disclosure as to the evidentiary error relating to the admission of exhibit 19, Assistant Public Defender Culbert filed a motion for new trial. At a brief hearing, the trial judge denied the motion and found that the admission of State's exhibit 19 was harmless error since "Mr. Furman admitted it was his blood . . . ." Resp. Ex. A at 180-81. Furman has failed to establish any error on the part of the trial judge in permitting counsel to file a motion for new trial and represent Furman at the motion hearing. Given the record, Furman is not entitled to habeas relief as to ground five. <u>See</u> Response at 21-23.

### F. Ground Six

As ground six, Furman asserts that the State committed "fraud upon the court" when it introduced the wrong DNA swab (exhibit 19) into evidence. Petition at 10. Respondents contend that the claim is procedurally barred since Furman failed to raise the issue on direct appeal. See Response at 24. On this record, the Court agrees that the claim has not been exhausted and is therefore procedurally barred since Furman failed to raise the claim in a procedurally correct manner. Furman has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that the claim is not procedurally barred and presents an issue of federal constitutional dimension, Furman's claim is still without merit. He has failed to establish that the State knew at trial that the wrong swab was being introduced. Upon discovering the evidentiary error, the prosecutor disclosed the mistake to the trial court. See Resp. Ex. A at 109 ("[T]he State hereby notifies the [c]ourt and the Defendant of the newly discovered mistake in the evidence actually introduced during the trial."). In the motion for new trial, Furman asserted neither bad faith nor fraud. See id. at 125. Given the record, Furman's ground six does not warrant federal habeas relief.

## G. Ground Seven

As ground seven, Furman asserts that appellate counsel was ineffective because he failed to raise the following issue on direct appeal: the trial court's <u>Faretta</u> inquiries were improper. Furman raised this issue in a pro se petition for writ of habeas corpus filed in the First District Court of Appeal, <u>see</u> Resp. Ex. J. Ultimately, the appellate court denied the petition on the merits, <u>see</u> <u>Furman</u>, 935 So.3d 27; Resp. Ex. L, and also denied Furman's motion for rehearing, <u>see</u> Resp. Ex. M.

Thus, as there is a qualifying state court decision,[13] the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Furman is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Furman's ineffectiveness claim is without merit. Claims of ineffective assistance of appellate counsel are governed by the same standards applied to

---

[13] <u>See</u> <u>Harrington</u>, 131 S.Ct. at 785.

trial counsel under <u>Strickland</u>. In order to establish prejudice, the court must review the merits of the omitted claim. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (citation omitted). Appellate counsel's performance is prejudicial if "the neglected claim would have a reasonable probability of success on appeal." <u>Id</u>. at 1265 (citation and quotations omitted).

Furman has failed to establish that appellate counsel's failure to raise this claim was deficient performance. Even assuming arguendo deficient performance by appellate counsel, Furman has not shown resulting prejudice.  Given the record, he has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim. Accordingly, Furman's ground seven is without merit since he has shown neither deficient performance nor resulting prejudice.  <u>See</u> Response at 24-26.

### H. Ground Eight

As ground eight, Furman asserts that the post-conviction court held an illegal evidentiary hearing while Furman "was judicially incompetent" and failed to appoint counsel for appeal. Petition at 13. Respondents contend that the claim is procedurally barred since Furman failed to raise the issue in state court. <u>See</u> Response at 27. On this record, the Court agrees that the claim has not been exhausted and is therefore procedurally barred since Furman failed to raise the claim in a procedurally correct manner. Furman has not

shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that the claim is not procedurally barred, Furman's claim is, nevertheless, without merit. To the extent that Furman raises challenges relating to the state collateral proceeding, such challenges do not state a basis for federal habeas relief. The Eleventh Circuit Court of Appeals "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment--i.e., the conviction itself--and thus habeas relief is not an appropriate remedy." Id. (citations omitted). Thus, Furman is not entitled to federal habeas corpus relief on this issue. See Response at 27; see also EH Tr. at 168-73.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Furman seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial

of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Furman "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Furman appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of August, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

sc 7/22
c:
John Michael Furman
Ass't Attorney General (McCoy)